UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MELVIN BANEGAS | CIVIL ACTION |
| VERSUS | NO. 17-7429 |
| BP EXPLORATION & PRODUCTION, INC. AND BP AMERICA PRODUCTION CO. | SECTION "R" (1) |

## ORDER AND REASONS

Before the Court is defendants' motion for summary judgment. Because there is no competent evidence to prove plaintiff's medical diagnosis or causation, defendants' motion is granted.

## I. BACKGROUND

This case arises from plaintiff Melvin Banegas's alleged exposure to harmful chemicals after the DEEPWATER HORIZON oil spill.[1] Plaintiff alleges that from May 1, 2010 to April 30, 2011, he was part of an organized effort to clean the shoreline near Venice, Louisiana of toxic materials released as a result of the oil spill.[2] During this work he was allegedly

---

[1] *See* R. Doc. 1.
[2] *Id.* at 4-5 ¶¶ 18-20.

exposed to oil, dispersants, and other harmful chemicals.[3] According to plaintiff, on March 1, 2013 he was diagnosed with chronic conjunctivitis, chronic sinusitis, dermatitis, eczema, shortness of breath, and dizziness.[4]

On August 2, 2017, plaintiff filed this action against defendants BP Exploration & Production Inc. and BP America Production Company, pursuant to the terms of the Medical Benefits Class Action Settlement Agreement (the Settlement Agreement) in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*.[5] Plaintiff alleges that his injuries were legally and proximately caused by his exposure to toxic chemicals during his clean-up efforts.[6] Defendants now move for summary judgment.[7] Plaintiff has not filed an opposition to defendants' motion.[8]

---

[3] *Id.* at 5 ¶ 21.
[4] *Id.* ¶ 22.
[5] *See generally id.*
[6] *Id.* at 5 ¶ 25.
[7] R. Doc. 32.
[8] On November 6, 2018, plaintiff's counsel withdrew from this action. R. Doc. 27. The Court ordered plaintiff to appear personally before the Court at a hearing on December 10, 2018 to discuss his representation in this matter. R. Doc. 29. Plaintiff did not appear at the hearing. R. Doc. 30.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

The BP Settlement Agreement resolved damages claims for certain individuals exposed to harmful chemicals as a result of the oil spill. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 10-2179, 2016 WL 4091416, at *4 (E.D. La. Aug 2, 2016). Class members who did not opt out of the agreement surrendered nearly all of their rights to sue BP in return for defined compensation benefits. *See Piacun v. BP Exploration & Prod., Inc.*, No. 15-2963, 2016 WL 7187946, at *3 (E.D. La. Dec. 12, 2016). One exception to this rule is when a class member's injury caused by his exposure to harmful chemicals is first diagnosed after April 16, 2012. *Id.* So long as certain preconditions are met, class members suffering from these "Later-Manifested Physical Conditions" (LMPCs) are permitted to file suit against BP in federal court as part of the Settlement Agreement's "Back-End Litigation Option" (BELO). *Id.* at *4.

Plaintiff is a class member who did not opt out of the Settlement Agreement, but he has stated a BELO claim against defendants arising from his alleged exposure to toxic chemicals. To succeed on this claim, he must prove, *inter alia*, (1) that he was correctly diagnosed with his alleged physical condition after April 16, 2012, and (2) that his LMPC was legally caused by

5

his exposure to harmful substances released as a result of the oil spill. *Id.* at *4-5.

In a toxic torts case, a plaintiff must rely on expert testimony to prove his medical diagnosis and causation. *See Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (noting that expert testimony is required to establish causation); *United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *7 (E.D. La. Nov. 1, 2016) ("[A]n opinion regarding a patient's medical diagnoses or prognoses 'falls within the scope of expert testimony under [Federal Rule of Evidence] 702'" (quoting *Barnes v. BTN, Inc.*, 2013 WL 1194753, at *2 (S.D. Miss. Mar. 22, 2013), *aff'd*, 555 F. App'x 281 (5th Cir. 2014)). There is no indication that plaintiff has retained an expert to provide testimony at trial related to his medical diagnosis or causation. *See* Fed. R. Civ. P. 26(a)(2)(B). Nor is there an indication that plaintiff will present expert testimony from a non-retained treating physician. *See id.* 26(a)(2)(C).

The only evidence before the Court that supports plaintiff's medical diagnosis, or an inference of causation, is a two-page Examination Report from Industrial Medicine Specialists ("IMS"), dated March 1, 2013.[9] But even if plaintiff were to belatedly designate his examiner from IMS as a non-

---

9    R. Doc. 32-3 at 2 ¶ 3; R. Doc. 32-4.

retained expert, any such testimony would be inadmissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 702(c) (expert testimony must be based on "reliable principles and methods"). The owner of IMS, Dr. Paul Hubbell, testified that IMS was retained after the BP oil spill by a law firm to provide medical examinations of settlement class members.[10] IMS conducted these examinations to determine whether the members had injuries sufficient to permit recovery of compensation benefits directly from BP pursuant to the Settlement Agreement.[11] Dr. Hubbell candidly admitted that the clinicians conducting these examinations did not follow the standards generally accepted in the medical community for establishing medical diagnoses.[12] Dr. Hubbell further admitted that IMS conducted its examinations without information that is critical to proving causation in this lawsuit, such as knowledge of what chemicals plaintiff was exposed to, the toxicological effect of those chemicals, or the degree of his exposure.[13] *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999) ("[S]cientific knowledge of

---

[10] R. Doc. 32-5 at 3.
[11] *Id.* at 10.
[12] *Id.* at 6-7 ("Q: Would you expect your clinicians who are making diagnoses to comply with the diagnostic criteria applicable to the particular condition being observed? A: In a general sense, yes . . . but not to the standard of the otolaryngologist or the society that's outlined a set of guidelines or tests or findings that you need to have to make a diagnosis like that.").
[13] *Id.* at 5.

the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiff's burden in a toxic tort case.").

 These admissions render any potential opinion from an IMS clinician on these topics unreliable and inadmissible under Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993) (to be reliable under Fed. R. Evid. 702, expert testimony must be "grounded in the methods and procedures of science"); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (district court properly excluded expert testimony that was not based on methodology generally accepted in the medical community). Because plaintiff cannot present competent evidence to prove his medical diagnosis or causation at trial, defendants' motion for summary judgment is granted.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. Plaintiff's BELO claim is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __4th__ day of February, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE